## HENRY PRENTISS & CO., Inc., v. UNITED STATES.

District Court, S. D. New York.
June 27, and Nov. 5, 10, and 15, 1930.

Jeffery & Redmond, of New York City (Wm. P. Jeffery and Joseph F. Murray, both of New York City, of counsel), for plaintiff.

Robert E. Manley, Acting U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for the United States.

CAFFEY, District Judge.

Though the action was tried last February, it was not argued or submitted until the 23d instant. As explained to counsel, it is essential that I dispose of it this week, before leaving on vacation. After I resume sitting in September, my time will be absorbed by new matters. Accordingly, without attempting a full exposition of the grounds, the points involved are determined as follows:

1. If the excess of actual value of the real estate over the figures entered in the books and balance sheets had been claimed in the returns for 1918 and 1920, the taxpayer would have been entitled to include the item in invested capital. As I understand, this proposition is not seriously (if at all) disputed.

2. Similarly, within the limits urged in the complaint, the taxpayer would have been entitled to include the item of intangibles in invested capital for those years. I think the corporate proceedings, recited in the stipulation, establish that the intangibles were part of the consideration paid for the $490,-000 of capital stock when originally issued. As said in Doyle v. Mitchell, 247 U. S. 179, 187, 38 S. Ct. 467, 62 L. Ed. 1054, and in Isbell Porter Co. v. Commissioner of Internal Revenue (C. C. A. 2, April 7, 1930), 40

F.(2d) 432, the facts, and not the book entries, govern.

3. Whether the 1918 refund claim (Exhibit 3) included the real estate item or the intangibles item depends exclusively upon the significance to be attributed to the statement therein that there existed an abnormal condition in invested capital.

Possibly the two items rest on somewhat different bases. It is manifest that the real estate was under consideration. In a sense, therefore, its value was in issue before the bureau. Nevertheless, the contention with which we are now engaged with respect to an increase in the real estate value was not specifically mentioned; and certainly the question of whether intangibles might be included in invested capital was not specifically mentioned.

I take it. that the regulation of the Secretary of the Treasury in regard to refund applications setting forth under oath "all facts relied on in support of the claim" is valid. Paul Jones & Co. v. Lucas (D. C.) 33 F.(2d) 907, 908; Art Metal Const. Co. v. United States (D. C.) 35 F.(2d) 379, 380. I do not believe that the. employment of the word "should," instead of the word "shall," makes any difference.

The obvious purpose of the regulation was to secure bringing before the commissioner enough to enable him to make a fair decision. What was prescribed was "facts"; not facts alone but "all facts relied upon in support of the claim," and these were required to be "clearly set forth under oath." A taxpayer seeking relief suffered no risk and incurred no penalty through failure to furnish evidence or to make a contention or to give a reason or to cite a provision of law. He was left free to base a suit upon theories or upon arguments or upon statutory interpretations or upon court decisions which he had ignored when he framed his refund claim. He was merely debarred from judicial relief upon facts different from those presented to the administrative officials. The government, in its consent to be sued, limited recovery to instances in which "all facts" relied on had previously been embodied in a verified refund application. Compliance is a condition precedent to maintaining the action. Rock Island, etc., R. R. v. United States, 254 U. S. 141, 143, 41 S. Ct. 55, 65 L. Ed. 188.

Was the assertion that there was an "abnormal" condition in invested capital a full relation of the facts on which the case at bar turns? Was that assertion equivalent to tell-

ing the commissioner that invested capital should include a larger sum for real estate or should include a sum for intangibles? I think not. See Arizona Commercial Mining Co. v. Casey (D. C.) 32 F.(2d) 288, 290.

I hold therefore that the 1918 refund claim did not set forth "all facts" within the meaning of the regulation.

4. The claim for refund of the 1918 taxes was filed in time. Apparently this is not now controverted.

5. If I be right as to the regulation, then (as I see it) there was no waiver. True, some officials had power to waive (Tucker v. Alexander, 275 U. S. 228, 230, 231, 48 S. Ct. 45, 72 L. Ed. 253); but neither a ruling by the commissioner that the two items sued on were not proper elements of invested capital nor a temporary admission in the original answer (withdrawn by the amended answer) of the due filing of the 1918 refund claim was sufficient to constitute a waiver. An essential element of waiver is a conscious relinquishment of something that is known. Waiver must be either expressed or implied. Indisputably here there was no express waiver, as there was in Tucker v. Alexander; and I see in the proof no warrant whatever for inferring a waiver. See Arizona Commercial Mining Co. v. Casey (D. C.) 32 F.(2d) 288, 291; Ritter v. United States (D. C.) 19 F. (2d) 251, 252.

6. Plainly, and I believe concededly, the 1920 refund claim (Exhibit 13) included both the real estate and the intangible items.

7. Within the time available for consideration, I have been unable to discover in the confusing phraseology of section 284 of the Revenue Act of 1926 (26 USCA § 1065), or elsewhere, any provision which brings the 1920 refund application within the exceptions mentioned in the Revised Statutes, § 3228 (26 USCA § 157), to the four years' period of limitations prescribed thereby. Failure of the answer to raise the issue is immaterial, because the burden is on the taxpayer to show affirmatively that the refund application was seasonably filed. United States v. Richards (C. C. A.) 27 F.(2d) 284.

Unless agreed on, settle judgment (including findings), in accordance with the foregoing, on five days' notice.

### November 5, 1930.

I have examined the briefs and the authorities cited. I have considered the findings proposed. I have also studied the questions raised and have formed some tentative impressions. Yet, I am somewhat uncertain what is the true significance of what is embraced in paragraph 7 of my memorandum of June 27, 1930, brought up on reargument. Since that memorandum was filed, the issues and the proof have so far passed out of mind that I feel that I cannot now fairly dispose of the matters presented without going again over the entire record. If counsel will send me all the papers (including their memoranda, preferably in the form previously furnished), at the first opportunity I will again review the case.

### November 10, 1930.

This memorandum will deal only with taxes of 1920. It will discuss only refunds, as distinguished from credits. Accordingly, references to statutes hereafter, unless otherwise stated, will be confined to portions which apply to refunds of taxes of that year. In the interest of brevity the Revised Statutes will be cited by giving merely the section numbers thereof.

I have re-examined all papers submitted pursuant to my memorandum of November 5. As I understand, the parties now stipulate that on May 6, 1926, the plaintiff filed with the Commissioner of Internal Revenue (1) a waiver of the taxpayer's right to have its taxes determined and assessed within the statutory time prescribed therefor, and (2) a claim for refund. I say that this is my understanding, because to date the matter rests entirely on oral statements recently made by counsel at my chambers, reiterated or implied in their briefs. The claim for refund (Exhibit 13) was put in evidence at the trial; but no waiver was then produced, although on the refund claim there is an entry (apparently in pencil) as follows: "Waiver dated 5—5—26 on file."

In view of the above, for the purpose of disposing of what is presently before me, I shall assume that it is undisputed, and that it is agreed that it shall be taken as part of the record, that both a waiver and a refund claim were duly filed with the commissioner on May 6, 1926. It may be remarked also that if the facts be as I have set out, then even at this late stage the admission on the record that the two papers were filed on the date stated merely saves the trouble of reopening the case so as to permit formal proof to that effect.

The sole question raised by the plaintiff is whether paragraph 7 of my memorandum of June 27, 1930, should be modified.

As already indicated, when I wrote the June memorandum there was no warrant for

finding that a waiver had been filed. It is true that on Exhibit 13 there was a notation (by some undisclosed person) about a waiver; but, apart from that not having been called to my attention, it seems to me insufficient as evidence. I still feel that, without a showing of waiver, I should adhere to my first memorandum. See Porter v. United States (C. C. A.) 27 F.(2d) 882, 884. If so, then all that remains for consideration is whether addition of proof of the waiver changes the result.

The issue turns on the condition of the law as it was amended by the Revenue Act of 1926 (44 Stat. 9). That is conceded, I believe, by both sides. There are three relevant provisions. I shall recite and comment on such portions only of those provisions as seem to me relevant.

1. Section 3226 (26 USCA § 156, 44 Stat. 116, § 1113(a) prohibits maintenance of a suit for the recovery of a wrongfully collected tax until a claim for refund has been filed. It also expressly requires that the claim shall be filed "according to the provisions of law in that regard." Those provisions are to be found in section 3228 or in other laws thereby extended to the subject.

2. Section 3228 (26 USCA § 157, 44 Stat. 115, § 1112), in subdivision (a), requires that, except as otherwise specified therein, refund claims be presented to the commissioner within four years next after payment of the tax. Among the exceptions, and the only exception pertinent for examination here, is that contained in section 284 of the Revenue Act of 1926. Subdivision (a), after the passage of the Revenue Act of 1926, included a clause as follows:

"All claims for the refunding * * * of any internal-revenue tax alleged to have been erroneously * * * collected * * * must, except as provided in sections 284 * * * of the Revenue Act of 1926, be presented to the Commissioner of Internal Revenue within four years next after the payment of such tax" (44 Stat. 115).

Mere inspection of the quoted words makes it manifest that, within the meaning of the filing requirement in section 3226 of the Revised Statutes, "the provisions of law in that regard" are that the refund claim be lodged with the commissioner either within four years after payment of the tax or in compliance with the terms (if applicable) of section 284 of the Revenue Act of 1926.

The tax was paid in 1921. The refund claim was presented in 1926. It is plain therefore that the presentation was not within the four years' period. Did that period govern? Obviously it did unless section 284 of the 1926 Act exempted plaintiff from it. Whether plaintiff was exempted is the issue on which exclusively a solution depends. If, however, section 284 does fit the case at bar, then clearly section 3228 relieved plaintiff from the obligation to present to the commissioner its refund claim within four years next after payment of the tax. Unless that were so, the phrase therein, "except as provided in sections 284 * * * of the Revenue Act of 1926," would be completely deprived of significance.

3. In subdivision (b) of section 284 of the Revenue Act of 1926 (26 USCA § 1065 (b), 44 Stat. 66), there are very explicit exceptions from the operation of the four years' period. Among these is included the exception created by and defined in subdivision (g) of the same section (26 USCA § 1065(g). In the latter, in substance, it is said that if a taxpayer shall (1) on or before June 15, 1926, file a waiver, and (2) on or before April 1, 1927, file a refund claim, then the refund to which he may show himself entitled shall be made. The exact language employed on the point is this:

"If the taxpayer has, on or before June 15, 1926, filed such a waiver in respect of the taxes due for the taxable year 1920 * * * then such * * * refund relating to the taxes for the taxable year 1920 * * * shall be * * * made if claim therefor is filed either on or before April 1, 1927, or within four years from the time the tax was paid."

The taxpayer was thus afforded two alternatives: Either (1) to file a waiver by June 15, 1926, and file a refund claim within four years following payment of the tax, or (2) to file the waiver by June 15, 1926, and then on or prior to April 1, 1927, file a refund claim.

Inasmuch as plaintiff filed both documents (the waiver and the refund claim) preceding the prescribed dates, it has brought itself within the exception embraced in subdivision (g) and, accordingly, has thereby relieved itself from the duty to file a refund claim within four years next after paying the tax as a prerequisite to maintaining the suit.

To summarize: By force of section 3226, it is a condition precedent to the maintenance of suit that a refund claim be filed "according to the provisions of law in that regard." By force of subdivision (a) of section 3228, as well as of subdivision (b) (1) of section 284 of the Revenue Act of

1926, the suit must fail unless either (as did not happen) the refund claim was filed within four years after payment of the tax or (as did occur), by force of subdivision (g) of section 284, a waiver was filed on or before June 15, 1926, and a refund claim was filed on or before April 1, 1927.

Inasmuch as subdivision (a) of section 3228, after the passage of the Revenue Act of 1926, expressly excepted from the operation of the four years' period of limitation any case provided for in section 284 of the Revenue Act of 1926 and subdivision (b) of section 284 of the Revenue Act of 1926 expressly excepted from the operation of the four years' period of limitation cases, covered by subdivision (g) of that section, in which a taxpayer by June 15, 1926, filed a waiver and by April 1, 1927, filed a refund claim, I see no escape from holding that the present action, so far as concerns the 1920 taxes, is not barred by limitations.

The argument of the government is that section 284 of the Act of 1926 is only administrative; that it merely enables the commissioner, in his discretion, to grant refunds, without conferring any right upon or affecting any remedy of the taxpayer. This contention is based on the premise that the statutes as they stood after the enactment of the Revenue Act of 1926 were identical in effect with, and the position is sought to be sustained by citation of cases involving, section 252 of the Revenue Act of 1921, or that section as amended March 4, 1923, construed in conjunction with section 3228 as it was then framed; but I think that neither section 252 nor either case relied on (J. H. Williams & Co. v. United States (D. C., E. D. N. Y., March 25, 1930) 46 F.(2d) 155; Jonesboro Grocer Co. v. United States, 66 Ct. Cl. 320) has any application. Moreover, if those court decisions should be deemed to mean that the statutes here involved ought to lead to the same consequences as such decisions attribute to the earlier statutes there discussed, I should regard them as wrong and, in the absence of their approval by controlling authority, I would decline to follow them.

In the first place, it seems to me sufficient to say that, while, in the respects material now, section 3226 as re-enacted in 1921 (42 Stat. 315) or as amended in 1923 (42 Stat. 1505) was the same as it was after the Revenue Act of 1926, yet section 3228 as worded in 1921 and 1923 (42 Stat. 314) contained no exception, made no reference to any other provision of law, and unqualifiedly limited to four years next after payment of the tax the time for presenting a refund claim therefor to the commissioner. So also section 252 of the Revenue Act of 1921 (42 Stat. 268), as well as that section as amended in 1923 (42 Stat. 1504), provided "that if, upon examination of any return" for certain designated years, it appear that an amount of tax has been paid "in excess of that properly due, then, notwithstanding the provisions of section 3228 of the Revised Statutes, the amount of the excess" shall be credited against any taxes "then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer: Provided, That no such credit or refund shall be allowed or made after five years from the date when the return was due, unless before the expiration of such five years a claim therefor is filed by the taxpayer." It is believed that the differences between the two sets of statutory provisions—those preceding and those following the enactment of the Revenue Act of 1926—prevent the one from shedding light on the meaning of the other and render the court decisions construing the earlier statutes inapplicable to the interpretation of the later statutes.

It may well be conceded that unless section 252 were limited to administrative refunds, there would, in the absence of its being mentioned in section 3228, be a conflict between the two sections. On the principle of avoiding conflict in statutory language when possible, it may be admitted that confining section 252 to administrative refunds was justified. Here, however, the situation is wholly altered. After 1926, section 3228 did refer to section 284. It was specifically said in the former that the filing of refund claims within the four years' period should not be required in the cases of taxpayers who complied with section 284 by filing waivers and refund claims preceding the dates therein fixed therefor.

Again, employment in section 252 of the opening words, "upon examination of any return," lends support to the government's insistence that the section was designed only to permit overpayments to be refunded when discovered by the commissioner on his scrutiny of the face of the returns. It will be noted, however, that section 284 is not so limited; on the contrary, that section definitely provides for claims initiated and urged by taxpayers themselves.

Lastly, on this aspect, in the 1923 amendment to section 252 (42 Stat. 1505) there is a proviso relating to the filing of both waivers and refund claims. This, however, apart from other differences in its phraseology

from section 284, applies only to 1917 taxes. The taxes dealt with in the Williams Case, supra, were for 1918, and hence a decision in that case contains nothing with respect to this particular proviso. Likewise, the Jonesboro Case, supra, does not mention the proviso. The consequence is that the only part of the 1923 amendment to section 252 which has any similarity even to section 284, with which we are now concerned, was not construed by either of the decisions cited by the government.

In the second place, sections 3226, 3228, and 284, all alike, have to do with filing. Section 3228 uses the word "presented," but plainly in the sense of "filing." I conceive of no reason why a regulation by section 284 of filing should be excluded from, while a regulation by section 3228 of filing is included in, the "provisions of law in that regard" mentioned in section 3226.

Filing as a prerequisite to suit rests on, and is established by, section 3226. That section leaves the method of filing to be ascertained from other "provisions of law." When the provisions outside of section 3226 are consulted, it is found that they are embraced as much in section 284 as in section 3228. It would nullify a part of section 3228 if account were not taken of section 284. It would equally nullify subdivision (g) of section 284 if the filing of a refund claim by April 1, 1927, were not deemed timely when it had been preceded by a waiver filed in advance of June 15, 1926. The two sections stand on the same footing. I discover no room or occasion, or even excuse, for narrowing the field of operation of section 284 so as, after the Revenue Act of 1926, to continue a system of administrative refunds, theretofore prevailing under differently worded legislation—legislation which was superseded in 1926—and so as, subsequent to 1926, to prevent, on the ground of delay, what may be called court refunds to taxpayers who have filed waivers and refund claims in strict conformity with the new laws brought into being in 1926.

My conclusions, therefore, are that: (1) On the facts before me at the time of my first memorandum, paragraph 7 was correct; (2) on those facts, supplemented by the new fact with respect to the filing of a waiver, the four years' period of limitations does not apply and plaintiff's refund claim was filed seasonably.

In event counsel do not agree on the findings, settle them on three days' notice. In the meanwhile it will be convenient for the papers to remain at my chambers; but they will be available to either side and, if needed in preparing the proposed findings, may be withdrawn.

November 15, 1930.

Since the filing of my memorandum of November 10, the defendant has submitted a supplemental memorandum, which is in the nature of an application for a rehearing. I have been carefully over it.

Except in the two respects mentioned below, I have already dealt with every argument now advanced by the defendant.

1. Fox v. Edwards (C. C. A.) 287 F. 669, is cited. It is to be noted, however, that the action there was against a collector, whereas the case here is against the government. In dealing with section 252 of the Revenue Act of 1918 (40 Stat. 1085), Judge Rogers (page 673 of 287 F.) explicitly declared that it was wholly without effect upon a suit against the collector. He furthermore (page 674 of 287 F.) disclaimed expressing any opinion as to the bearing of the section upon a suit against the United States.

2. Section 284 of the Revenue Act of 1926 (44 Stat. 66 [26 USCA § 1065]) follows, as the defendant says, the subtitle of "credits and refunds." For reasons which I assigned in United States v. Mouyas, 42 F. (2d) 743, at pages 744, 745, I do not feel that the employment of this subtitle is of any significance whatsoever in the ascertainment of the meaning of the section.

I accordingly adhere to my November 10 memorandum.