### LUCKER v. UNITED STATES.
### No. J–603.

Court of Claims.
Oct. 20, 1931.

Charles N. Goodwin, of Washington, D. C., for plaintiff.

James A. Cosgrove, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

The first issue to be decided is whether plaintiff is entitled to maintain this suit, and that issue turns upon the question whether a claim for refund for the taxable year 1920 filed within five years after the return was

due was timely. Plaintiff insists that it was, and contends that section 252 of the Revenue Act of 1918 and section 281 of the Revenue Act of 1924 (26 USCA § 1065 note) made an exception to the limitation of two years provided in section 3228 of the Revised Statutes as it existed at the time of the Revenue Act of 1918 and the four-year limitation as provided in that section, as amended by section 1316 of the Revenue Act of 1921 with respect to income and profits tax.

On the other hand, counsel for the defendant contends that the provisions of section 252 of the Revenue Acts of 1918 and 1921 providing for the allowance of refunds and credits of income and profits tax, if a claim therefor was filed within five years after the return was due, and similar provisions contained in section 281 of the Revenue Act of 1924 and section 284 (a), (g) of the Revenue Act of 1926, 26 USCA § 1065 (a), (g), are purely administrative provisions relating to the right or duty of the Commissioner of Internal Revenue to credit or refund overpayments in fact, that is, overpayments which the Commissioner himself might determine of income and profits tax, and have no relation whatsoever to the right of any court to take jurisdiction of a suit for the recovery of income and profits tax in which the fact of overpayment is the question in issue; that in order for the taxpayer to maintain a suit for the recovery of a tax alleged to have been erroneously or illegally collected, he must have filed a claim for refund within four years after the payment of the tax as provided in section 3228, as amended by section 1316 of the Revenue Act of 1921.

We can find no merit in this contention made on behalf of the defendant. Prior to the enactment of section 250 of the Revenue Act of 1918 (40 Stat. 1082), there was no limitation on the authority of the Commissioner of Internal Revenue to assess and collect income and profits tax if he discovered an understatement of income in the return within three years. Section 250 of the Revenue Act of 1918 fixed the limitation of the authority of the Commissioner to assess and collect income and profits tax at five years after the return was due, except in case of failure to make a return and in case of a false or fraudulent return. At that time section 3228 of the Revised Statutes stood as it was enacted June 6, 1872, 17 Stat. 257, and provided that all claims for the refunding of any internal revenue tax alleged to have been erroneously or illegally assessed or collected must be presented to the Commis-

sioner within two years next after the cause of action accrued. Section 3226, Revised Statutes, enacted July 13, 1866, 14 Stat. 152, provided that no suit should be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected until appeal had been made to the Commissioner according to the provisions of law in that regard and the regulations, and the decision of the Commissioner had been had thereon, and provided, further, that, if the Commissioner's decision should be delayed more than six months from the date of such appeal, then suit might be brought, without having the decision of the Commissioner, within two years after the cause of action accrued as provided in section 3227 of the Revised Statutes. Until the enactment of section 252 of the Revenue Act of 1918, effective January 1, 1918, the requirement that all claims for refund filed within two years after the cause of action accrued, that is, after payment of the tax, applied to all classes of internal revenue taxes, and the right to institute suit as provided in sections 3226 and 3227 was dependent upon the filing of such claims within the time specified.

The Revenue Act of 1918, as above stated, in section 250 fixed a limitation of five years after the income and profits tax return was due within which the Commissioner could assess and collect the tax. Section 252 of the 1918 act, as it passed the House, provided that, if upon examination of a return made pursuant to the acts of 1909, 1913, 1916, and 1917, or that act, it appeared that an amount of tax had been paid in excess of that properly due, the amount of excess so paid should be credited against any tax or installments thereof then due from the taxpayer under any other return, and that any balance of such excess should be immediately refunded to the taxpayer, and contained no provision with reference to the filing of claims for refund. The Finance Committee of the Senate, Sixty-Fifth Congress, third session, amended the section so as to provide for the filing of a claim for refund within five years after the return was due, and that committee in its report No. 617 said: "Under the House bill the Government has five years within which to determine and assess the tax. In section 252, as amended by the committee, the two-year limitation upon the right of the taxpayer to obtain a credit or refund has been removed, so that the taxpayer's right shall not be prejudiced by any delay on the part of the Government in discovering that he has made an overpayment. Under the section, as

amended, the limitation upon the taxpayer is the same as that upon the Government."

The revenue bill of 1921 as it passed the House changed the bar of limitation for assessment and collection of taxes under the Revenue Act of 1918 from five to three years, and provided a limitation of three years under the Revenue Act of 1921, and five years for the assessment and collection of taxes under all acts prior to 1918. See report No. 350, Committee on Ways and Means, Sixty-Seventh Congress, first session. The Finance Committee of the Senate changed this provision, and fixed the limitation within which assessments might be made at four years in case of a tax under the act of August 5, 1909, and at five years in respect of a tax under the acts of 1916, 1917, and 1918, and four years under the Revenue Act of 1921. The act as finally approved was in accordance with the Senate amendment.

Section 252, as contained in the Revenue Act of 1918, was re-enacted in the 1921 act with the addition of a proviso that, if the invested capital should be decreased by the Commissioner, due to the failure of the taxpayer to take adequate deductions in previous years, with the result that his tax in excess of that properly due was paid in any previous year, then, notwithstanding any other provision of law in relation to the expiration of such five-year period, the amount of such excess should without the filing of any claim therefor be credited or refunded as provided in that section. The Finance Committee of the Senate, in its report No. 275, Sixty-Seventh Congress, first session, said:

"Section 252 is extended to authorize a refund in any case (regardless of time limitations) in which the invested capital of the taxpayer is decreased by the Commissioner of Internal Revenue and such decrease is due to the fact that the taxpayer failed to take adequate depreciation or other deductions in previous years. The refund is for the excess taxes paid in such prior years.

"*With respect to all other taxes* it is provided in section 1316 of this bill that claims for refund may be filed within four years after the payment of the tax, instead of within two years, as under existing law." (Italics supplied.)

The Revenue Act of 1921, in section 1316 thereof, amended section 3228 of the Revised Statutes, and changed the limitation on the filing of claims for refund from two years to four years next after the payment of the

tax, and, after so amending that section, provided that: "This section, except as modified by section 252, shall apply retroactively to claims for refund under the Revenue Act of 1916, the Revenue Act of 1917, and the Revenue Act of 1918." All of those Revenue Acts imposed taxes other than income and profits taxes.

We think it is clear from the foregoing that Congress intended that a taxpayer should have a right to institute suit for the recovery of any income and profits tax alleged to have been erroneously or illegally collected for 1920 if he filed a claim for refund therefor within five years after the return was due and the Commissioner rejected it in whole or in part, or delayed for more than six months to act upon it. See section 1318 of the Revenue Act of 1921 amending section 3226, Rev. St.

There is nothing in the provisions of the statutes to which reference has been made to indicate that the limitation of five years for the filing of claims for refund of income and profits tax was merely directory to the Commissioner, permitting him in his discretion to make a refund or a credit of any overpayment that he might determine should be made as an administrative matter, and gave to the taxpayer no right to bring suit if his claim should be denied. In enacting these provisions, Congress was not making a distinction between an overpayment in fact and an alleged overpayment. Congress was concerned with overpayments alleged and claimed by the taxpayer as well as those which the Commissioner might discover in his audit. Otherwise we think an entirely different provision would have been inserted. Section 252 provided a special limitation for the filing of claims for refund in respect of income and profits taxes giving the taxpayer a longer time to file a claim with respect to certain of these taxes, but, at the same time, it did not deprive him of obtaining a refund in any case if he filed a claim within four years after payment. Thus construed, section 252 of the 1918 and 1921 acts and similar provisions of subsequent acts are consistent with section 3228 of the Revised Statutes as amended. The five-year limitation was first enacted at a time when the complicated provisions of the taxing acts were new, and the purpose of the section was to remove the two-year limitation of the right of a taxpayer to obtain a credit or refund—not merely to permit the Commissioner to make a refund that he might determine to be due, but to give the taxpayer the right to obtain a refund by suit in court

under the provisions of section 3226 if his claim should be rejected. This view of the purpose of the section is further supported by the report of the Finance Committee of the Sixty-Seventh Congress, first session, on the revenue bill of 1921, in which, on pages 21 and 22, it is stated, after referring to section 252 which provided a limitation of five years for the filing of a claim for refund of income and profits tax, that: "With respect to all other taxes it is provided in section 1316 of this bill that claims for refund may be filed within four years after the payment of the tax, instead of within two years, as under existing law." There were a number of different kinds of internal revenue taxes other than income and profits taxes to which the four-year limitation applied. And, in addition to the statement of the committee, section 1316 of the Revenue Act of 1921 amending section 3228 specifically stated that section 3228 was modified by section 252.

The foregoing view with reference to the right of the taxpayer to institute suit upon the denial of a claim for refund filed within five years after the return was due is further borne out by the consideration given by Congress to the subject in section 281 (a), (b), (e), and (f), of the Revenue Act of 1924 (26 USCA § 1065 note), changing the limitation to four years after the payment of the tax, and section 1012, amending section 3228, Revised Statutes. See also, section 284 (a), (b) (1), (g), and (h) of the Revenue Act of 1926 (26 USCA § 1065 (a), (b) (1), (g), (h).

The claim for refund in this case, having been filed within five years after the return was due, was timely, and under section 3226 of the Revised Statutes, as amended by the Revenue Act of 1926, the taxpayer had a right to institute this suit, and the court has jurisdiction thereof. A claim for refund filed within the time permitted by section 252 is a claim filed "according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof" (section 3226 of the Revised Statutes, as amended), as much as is a claim filed within four years after the payment of the tax under section 3228, as amended, and a suit thereon may be brought to recover any overpayment alleged in the claim to have been made. In reaching this conclusion, we have given careful consideration to the decision in Fox v. Edwards (C. C. A.) 287 F. 669, relied upon by defendant, and, notwithstanding our great respect for the decision of the learned court, we are unable to agree with the conclusion reached therein that the five-year limitation was purely administrative and directory to the Commissioner, and gave the taxpayer no right to institute suit, unless the claim was filed within four years after the tax was paid, as provided in section 3228 of the Revised Statutes. See Henry Prentiss & Co. v. United States (D. C.) 46 F.(2d) 159, 161–164.

■ The next question relates to the right of the plaintiff to reduce the inventory shown in the return and determined by the Commissioner on account of worthless and unsalable phonograph records included therein at factory cost. In the circumstances of this case, we are of opinion that plaintiff is entitled to exclude this merchandise from its inventory at December 31, 1920. This relief can only be denied him on the ground of a possibility which is most improbable of ever occurring, to wit, the securing of credit on further purchases for the defective and unsalable records on hand at December 31, 1920. In our opinion, such a remote possibility is not a reasonable basis for denying the taxpayer the right to reduce his inventory at December 31, 1920, on account of records which were otherwise clearly worthless. The facts show that the return privilege was no more than sufficient to take care of the normal condition where records were broken, found defective, or unsalable for any one of many reasons, and did not take care of an abnormal situation such as arose in 1920 when existing records became obsolete, worthless, and unsalable through the introduction of an entirely new and improved record. As a result of this condition, the taxpayer had on hand at December 31, 1920, a large quantity of these records which were worthless for any purpose except under the return privilege, but his quota under this privilege was exhausted, and he was continuing to accumulate defective and unsalable records from two sources; namely, records returned by retail dealers for their return privilege and from current purchases. The former source was almost certain to produce the maximum returns possible to the retail dealers under their return privilege, since they likewise had a supply of obsolete records on hand, and subsequent events have shown that they did return large numbers of records during the period 1921 to 1926, inclusive. Not only did the taxpayer have those records to dispose of under his return privilege, if he should hope to realize anything therefrom, but at the same time he was making new purchases from which the normal accumulation of brok-

en and unsalable records was arising. While subsequent events are not determinative of a fact on a given date prior thereto, that which occurred in this case subsequent to December 31, 1920, confirms what would have been a reasonable expectation at that time as to future disposition of abnormal supplies of old records on hand. At December 31, 1920, the cost of the old records on hand was $43,-546.77, whereas in February, 1926, the supply of old records had only been reduced to $35,996.30—that is, the amount of $7,500 in more than five years of operations—and apparently there were also on hand other unsalable records which had accumulated on account of purchases of new records made subsequent to December 31, 1920.

In view of the facts disclosed by the record, we are of opinion that good accounting would require that the entire supply of old and unsalable records on hand at December 31, 1920, be excluded from the inventory at that date on the ground that the records were worthless from a sales standpoint, and that no reasonable probability existed under which the taxpayer could avail himself of the return privilege on account thereof. Taxation is eminently practical, and we think this is particularly true as to inventories which need only conform to the "best accounting practice in the trade or business and as most clearly reflect the income." Not only do we think good accounting practice would require the exclusion of the entire stock of worthless records, but also that a closing inventory at December 31, 1920, which included these records at any value to the plaintiff, would result in income not being clearly reflected. Templeton, Kenly & Co., Ltd., v. Commissioner, 6 B. T. A. 61; The Celluloid Co. v. Commissioner, 9 B. T. A. 989; Wilson Furniture Co. v. Commissioner, 10 B. T. A. 1294.

Plaintiff is not, as contended by the defendant, attempting to make a retroactive election as to the basis on which to take his inventory at December 31, 1920. He took his inventory on the correct basis, but he made a mistake therein which he is entitled in this suit to correct.

Judgment in favor of the plaintiff for $24,280.86, with interest at 6 per cent. per annum from the date of payment to such date as the Commissioner of Internal Revenue may determine in accordance with section 177 (b) of the Judicial Code as amended will be entered. It is so ordered.