## LANCASTER COTTON MILLS v. UNITED STATES.

### No. J–596.

Court of Claims.

May 31, 1932.

In this suit plaintiff seeks to recover $104,-349.36, income and profits tax alleged to have been overpaid for the taxable period January 1 to June 30, 1917, with interest from June 10, 1920, and also for interest from this date to August 6, 1923, on $2,854.01, the portion of an overpayment allowed by the Commissioner for the period in question and credited to an additional tax for 1916, and interest on $9,-360.07, the remainder of the overpayment allowed and refunded.

Plaintiff bases its claim for the overpayment of $104,349.36 entirely upon the decision in Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018, and bases its claim for interest upon the allowance by the Commissioner of the claim for refund filed by it.

The defendant contends that plaintiff is not entitled to recover any amount for the reason, first, that the plaintiff filed no claim for refund with respect to the alleged overpayment of $104,349.36 sued for, and the case of Bonwit Teller & Co. v. United States, supra, is not applicable to the claim presented; and, secondly, that, with respect to the overpayment allowed by the Commissioner, a portion of which was credited and the remainder refunded, the plaintiff filed no claim for refund within the meaning of the statute, and the overpayment was allowed, credited, and refunded pursuant to the authority vested in the Commissioner to do so without the filing of a claim.

Special findings of fact:

1. The plaintiff is a South Carolina corporation with principal office and place of business at Lancaster. Within the time prescribed by law it obtained permission from the Commissioner to file its income and profits tax return for 1918 and subsequent years on the basis of fiscal years ending June 30 instead of for the calendar year. As a result, plaintiff was required to file, and, on April 1, 1918, duly filed, its income and profits tax return for the fiscal period April 1 to June 30, 1917, disclosing a total tax liability of $151,537.75, which was duly assessed and paid June 7, 1918.

Thereafter, on November 26, 1919, it filed an amended income and profits tax return for the fiscal period mentioned disclosing a net income of $581,792.87, a statutory invested capital of $2,635,320.55, and a total tax liability for the period of $218,958.27. Thereafter, on February 20, 1920, the Commissioner notified plaintiff that an examination and audit of the aforesaid returns disclosed an additional tax for the period January 1 to June 30, 1917, of $177,791.36, which amount was duly assessed. June 10, 1920, plaintiff paid $99,803.04 of the additional assessment and on the same day filed a claim for abatement of the balance of $77,988.32.

2. March 2, 1923, plaintiff filed a timely claim for refund for the period January 1 to June 30, 1917, with respect to the tax paid for the fiscal period January 1 to June 30, 1917, for "one dollar, or such greater amount as is legally refundable," stating thereon that "This claim is filed to protect deponent's interest against the expiration of the five-year limitation provided by section 252 of the revenue act of 1921."

3. Thereafter the Commissioner of Internal Revenue considered the claims for abatement and for refund with respect to the tax assessed and paid for the period January 1 to June 30, 1917. On April 13, 1923, the Commissioner, having completed his examination and audit, mailed to the plaintiff a letter stating that an examination of its returns, together with the information theretofore submitted, had been made, and that the results thereof were outlined in a statement and schedules attached to said communication. The schedules and computations attached to this letter showed an overassessment of $90,202.40 for the six months' period ending June 30, 1917.

4. July 20, 1923, the Commissioner signed a schedule of overassessment of the aforesaid $90,202.40 in respect of the plaintiff's tax for the period in question for transmission to the collector of internal revenue for the district in which the plaintiff filed its return, and the schedule of overassessment was thereupon transmitted to the collector for his action in accordance with the instructions appearing thereon. The collector complied therewith, and, after examining his records of the accounts of the plaintiff, prepared, signed, and returned to the Commissioner the schedule of abatements, refunds, and credits showing the portions of the overassessment of $90,202.40 subject to abatement, credit, or refund, according to his records. The schedule of abatements, refunds, and credits forwarded to the Commissioner by the collector was approved and signed by the Commissioner August 6, 1923.

5. August 22, 1923, the Commissioner prepared and mailed to plaintiff a "certificate of overassessment, No. 78592," for $90,202.40. This certificate of overassessment stated:

"An audit of your income-tax return for period January 1 to June 30, 1917, Form 1031—1103, and examination of related claim (if any), indicates that the amount of tax assessed to you for this year was in excess of the amount due.

"The adjustments producing this overassessment of $90,202.40 are contained in schedules attached to a separate communication addressed to you.

"In the determination of this overassessment, the statements made in your claim for the abatement of $77,988.32, corporation income and excess-profits tax, for the period in 1917, have been given careful consideration.

"Tax previously assessed:

Original assessment, March, 1918, p. 261, L. 4 .......... $151,537.75
Additional assessment, April, 1918, p. 4, L. 2 ............ 177,791.36
                                                            ─────────
                                          329,329.11
Correct tax liability ......... 239,126.71
                                                            ─────────
Amount of overassessment $ 90,202.40

"* * * In the determination of this overassessment, the statements made in your claim for the refund of $1, corporation income and excess-profits tax, for the period in 1917 have also been given careful consideration.

Amount abated ............... $77,988.32
Amount credited ............. 2,854.01
Amount refunded ............. 9,360.07"

The "separate communication" referred to in the above-mentioned certificate of overassessment was the communication of April 13, 1923, hereinabove mentioned, which statements, schedules, and computation showing an overassessment of $90,202.40 were incorporated in said certificate of overassessment.

6. In determining the plaintiff's tax liability for the six months' period January 1 to June 30, 1917, the Commissioner determined a net income of $625,732.72. In determining said tax liability for said period, the Commissioner determined plaintiff's statutory invested capital for the twelve months' period January 1 to December 31, 1917, to be $2,770,588.95, and thereupon allowed and used one-half of said amount, or $1,385,294.-47, as the statutory invested capital of plaintiff for the taxable fiscal period January 1 to June 30, 1917.

The Commissioner also reduced the exemption of $3,000, specified in section 203 (a) of the Revenue Act of October 3, 1917 (40 Stat. 304), to $1,500, or six-twelfths of the amount thereof.

Upon the net income, invested capital, and the specific exemption mentioned, the Commissioner determined and computed plaintiff's total tax liability of $239,126.71 for the six months' period January 1 to June 30, 1917, as disclosed in the certificate of overassessment, the schedules, and the computation incorporated therein.

7. Of the resulting overassessment of $90,202.40, $77,988.32 thereof had not been paid, and this was abated; of the remaining $12,222.08 of the overassessment which had been paid June 10, 1920, $2,854.01 was duly credited to an additional tax for 1916, and $9,360.70 was refunded by Treasury check which accompanied the certificate of overassessment mailed to the plaintiff.

On February 13, 1928, plaintiff mailed to the Commissioner a letter requesting the payment of interest on the credit of $2,854.01 and the refund of $9,360.70 pursuant to the provisions of section 1324 of the Revenue Act of 1921 (42 Stat. 316). The Commissioner denied this request.

8. The Commissioner did not allow or pay any interest on the overpayment credited and refunded.

In determining the plaintiff's total tax liability and the overassessment set forth in the letter of April 13, 1923, and the certificate of overassessment of August 22, 1923, the Commissioner made sixteen adjustments in plaintiff's net income and five adjustments in its invested capital, as set forth in schedules 1 to 4, inclusive, attached to and incorporated in the certificate of overassessment. The income adjustments included an addition of a substantial profit on a hedging transaction, the disallowance of a large amount for depreciation which had previously been deducted by the taxpayer, the capitalization of numerous items which had been charged to expense, and a substantial revision of plaintiff's inventory values. The invested capital adjustments related to inventory values, reissued Treasury stock, property and land values, depreciation reserve, and an accrual of federal tax for 1916.

July 2, 1925, plaintiff filed a claim for refund for $100 with the collector of internal revenue to which was appended a statement setting forth certain grounds for the claim; however, no claim was made thereon that plaintiff's tax had been overpaid for the period in question, January 1 to June 30, 1917, as a result of the alleged failure of the Commissioner to allow sufficient invested capital or the full statutory exemption now claimed by plaintiff and made the basis of this suit for the item of $104,349.36. On August 26, 1926, the Commissioner notified the plaintiff by letter that this claim was barred and that it was rejected. On August 28, 1926, plaintiff wrote the Commissioner a letter stating: "We acknowledge receipt of your letter of August 26, 1926, rejecting our refund claim for $100 for the period ended June 30, 1917. According to our records, this claim was filed after the statute had expired. However, under date of February 28, 1923, we filed a claim for one dollar, which claim was considered by the department, as is evidenced by a letter dated August 22, 1923, in which an overassessment of $90,202.40 was allowed. There had been an additional tax assessed for this period in April, 1920, P–4, L–2, of $177,-791.36. It is our contention that since there was an overassessment in 1920 of $87,588.-96 greater than the overassessment allowed in 1923, the claim filed February 28, 1923, for one dollar (or such greater amount) should operate to relieve us from the tolling of the statutes."

The Commissioner declined to consider the claim for refund filed July 2, 1925, and officially rejected the same September 2, 1926, on the ground that at the time it was filed it was barred by the statute of limitation.

9. On April 5, 1926, this court decided the case of Strong et al. v. United States, 62 Ct. Cl. 67, in which it was held that, in computing the profits tax for a period of less

than twelve months under the Revenue Act of 1917 the total average invested capital and the full statutory exemption should be used without proration.

Thereafter, on August 28, 1926, plaintiff mailed a letter to the Commissioner asserting that the entire amount of the aforesaid additional assessment of $177,791.36 constituted an overassessment. In another letter mailed by plaintiff's attorney to the Commissioner February 21, 1928, captioned, "Application for correction of allowed overassessment," for the period January 1 to June 30, 1917, plaintiff requested the Commissioner to reopen the claim for refund filed March 2, 1923, and correct the overassessment theretofore allowed in the amount of $90,202.40 by using the full invested capital and the full deduction in accordance with the decision in the case of Strong et al. v. United States, supra. The Commissioner denied the requests, and on August 25, 1928, plaintiff instituted this suit.

James Craig Peacock, of Washington, D. C. (Otis Beall Kent and Arthur H. Deibert, both of Washington, D. C., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

It is stipulated that, if the plaintiff is entitled to recover on the claims presented, judgment should be rendered in its favor for the principal amount of $104,349.36, with interest thereon, and for interest on the amounts of $2,854.01 and $9,360.07 credited and refunded. The defendant denies the right of plaintiff to recover on any of the claims made.

Upon the record in this case we are of opinion that the plaintiff is not entitled to recover with respect to the first item of $104,-349.36, being the alleged overpayment for the six months' period in excess of that allowed by the Commissioner. Recovery of this amount is based upon the claim of plaintiff that the Commissioner in his determination and allowance, as evidenced by the certificate of overassessment of August 22, 1923, should have used plaintiff's full invested capital of $2,770,588.95 and the full exemption of $3,-000 instead of prorating the invested capital and the exemption to the six months' period as he did.

The plaintiff states that "This action is not for the overpayment of tax paid in 1918 and 1920, but is grounded upon the determination evidenced by the certificate issued by the commissioner August 22, 1923. Plaintiff stands squarely upon the ruling of the Supreme Court in Bonwit Teller & Co. v. United States, supra," and, further, that "the cases are distinguishable only in that the Government in the Bonwit Teller Case had failed to pay an amount computed in the commissioner's determination, while the gravamen of the instant case is that the commissioner failed to pay the amount which *should have been computed* therein." In our opinion the decision in Bonwit Teller & Co. v. United States, supra, has no application here. There is a vital distinction between the failure of the Commissioner to pay an amount of an overpayment determined and allowed by him and his failure to determine and compute the invested capital and the exemption in the manner now claimed by the plaintiff. The salient point in the Bonwit Teller Case was that the Commissioner had determined, computed, and allowed an overpayment in a stated amount, a portion of which he thereafter declined to pay. In the present case the overpayment determined, computed, and allowed by the Commissioner was fully paid by credit or refund and the liability of the government arising out of the Commissioner's action was fully satisfied and extinguished. In such a case no suit may be maintained to recover an alleged overpayment in excess of that allowed by the Commissioner unless the matters forming the basis of suit for the claimed excess overpayment were brought to the Commissioner's attention by a timely claim for refund. This was not done, and plaintiff makes no contention to that effect. The issuance of a certificate of overassessment by the Commissioner showing the basis of his final determination and the manner in which the overassessment was arrived at does not give rise to an account stated for an amount which would have been shown as an overassessment if the Commissioner had determined and computed the net income, invested capital, deductions, and exemptions in a manner and in amounts differently from what he did. To so hold would nullify the provisions of section 3226 of the Revised Statutes, as amended (26 USCA § 156).

Pursuant to the permission granted by the Commissioner to plaintiff to change its method of accounting from a calendar year to a fiscal year, the return for the fiscal taxable period January 1 to June 30, 1917, was due

and was filed April 1, 1918. The tax of $151,537.75 shown to be due upon this return was paid June 7, 1918. The Commissioner made an additional assessment of $177,791.-36 for this period, of which $99,803.04 was paid June 10, 1920.

March 2, 1923, within five years after the return for the period in question was due, plaintiff filed a claim for refund. Lucker v. United States, 53 F.(2d) 418, 72 Ct. Cl. 606. This claim for refund was for $1, or "such greater amount as is legally refundable." It stated no specific ground upon which a refund should be granted, nor did it set forth any facts which would show that any overpayment had been made. The only statement contained therein was that "This claim is filed to protect deponent's interest against the expiration of the five-year limitation provided by section 252 of the Revenue Act of 1921." It is definitely established that this claim was not amended prior to the final action by the Commissioner and the issuance of a certificate of overassessment of August 22, 1923, so as to call to the Commissioner's attention or place in issue the matters which constitute the basis of this suit for the recovery of the alleged overpayment of $104,349.36. The claim as filed, however, gave the Commissioner jurisdiction over the matter of the tax liability for the period involved beyond the period of five years after the return was due. Factors' & Finance Co., Inc., v. United States (Ct. Cl.) 56 F.(2d) 902. And he had jurisdiction and authority to determine, allow, and refund whatever overpayment he might find had been made, notwithstanding the defectiveness of the claim. Bonwit Teller & Co. v. United States, supra. Since the refund claim filed in this case specified no ground and stated no facts to show an overpayment, the plaintiff would have had no right to institute this suit to recover an overpayment on the ground specified in the petition or to recover any overpayment for the period involved if the Commissioner had rejected the claim for refund of March 2, 1923. United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025; Factors' & Finance Co., Inc., v. United States, supra. It is obvious therefore that the Commissioner's allowance of an overassessment in a certain amount did not give the taxpayer a greater right to sue for a larger overpayment than it would have had if the Commissioner had entirely rejected the claim. Plaintiff cannot, therefore, maintain this suit for the alleged overpayment of $104,-349.36.

On the question of interest on the overpayment of $12,214.08 allowed, the defendant contends that the action of the Commissioner in allowing the refund and credit was not the result of the allowance of the claim for refund, but was "the result of an office audit," and pursuant to the authority conferred upon the Commissioner by the statute to allow the overpayment and credit independently of the claim for refund. We cannot agree with this contention of the defendant. The claim filed gave the Commissioner jurisdiction, and he so construed it. The term "office audit" has no significance in a case where the Commissioner would have had no authority to allow an overpayment and make a refund but for the claim filed. The term "office audit" appears to be used in this case to convey the idea that the Commissioner allowed the overpayment and made the refund and credit upon the basis of information and facts in his possession or obtained by him in connection with his consideration and action upon the claim, and that therefore the claim was invalid and of no effect. So far as concerns the jurisdiction and authority of the Commissioner to act upon the claim filed by the plaintiff, the manner in which the facts were submitted to him, or brought to his attention, was unimportant. The only purpose of supplying facts is fully to inform the Commissioner so that he may act intelligently. The time within which he could allow an overpayment and pay a refund without a claim had expired when he made his audit. The claim filed, although defective, gave him jurisdiction of the matter and under it he had authority to proceed with the audit and to determine and allow the overpayment beyond the period within which he could have done so without a claim. In such a case, however, no suit may be maintained to recover any overpayment in excess of that allowed by the Commissioner unless the matters made the basis of the suit were brought to the attention of the Commissioner and urged by the taxpayer.

In Art Metal Construction Co. v. United States, 47 F.(2d) 558, the Circuit Court of Appeals for the Second Circuit held that a refund claim timely filed for a particular taxable year which does not specifically state the grounds upon which it is based and contains no statement of facts intended to be relied upon to show an overpayment is not a claim for refund, but a mere caveat requiring no action by the Commissioner and which he may completely ignore, and that such a claim may not be amended so as to state a

ground and supply facts after the expiration of the date on which the taxpayer could file an original claim. We think this holding as a general rule is too limited as concerns the jurisdiction and authority of the Commissioner to act in the premises after the expiration of the period within which he may act without a claim, and as concerns the right of amendment before action is taken by the Commissioner. Factors' & Finance Co., Inc., v. United States, supra.

The facts and circumstances in this case and those in Memphis Cotton Oil Co. v. United States (Ct. Cl.) 59 F.(2d) 276, decided this date, and Factors' & Finance Co., Inc., v. United States, supra, illustrate the application of the rule which we think is authorized by the statute. Compare also McKesson & Robbins, Inc., v. Edwards (D. C.), 38 F.(2d) 887; Prentiss & Co., Inc., v. United States (C. C. A.) 57 F.(2d) 676, April 11, 1932, paragraph 1106, Prentice Hall, vol. III, 1932. It is the regular practice of the Commissioner's office upon the receipt of refund claims to make a record thereof in the claims control section and to route such claims to the proper division of his office for consideration and action, and thereafter to record the action taken thereon. Williams & Co. v. United States, 39 F.(2d) 1019, 48 F.(2d) 672, 71 Ct. Cl. 1. In point of fact, therefore, it has long been the practice of the Commissioner to consider the cases to which such claims relate and to take some action on the claims. In some cases he allows an overpayment to the extent that it is justified by the record before him, as in this case. In other cases he calls the attention of the taxpayer to the insufficiency of the claim. In other cases he rejects the claims. This practice of the Commissioner is authorized by the statutes. We think the practice followed by the Bureau should be given weight in determining whether a claim that is defective gives the Commissioner jurisdiction beyond the limitation period of five years, and we think such a defective claim may be amended and perfected before it has been acted upon by the Commissioner.

The five-year period of limitation within which the Commissioner could allow a refund or credit, or pay a refund under section 252 of the Revenue Act of 1921 (42 Stat. 268), without the filing of "a claim for refund" expired in this case April 1, 1923. The first action of the Commissioner setting forth the results of his audit with reference to the tax liability of the plaintiff for the taxable period in question was on April 13, 1923, as disclosed by his letter of that date to the plaintiff to which was attached various statements and schedules showing the details of his computation, which computation was afterwards embodied as a part of the certificate of overassessment. Thereafter, and beyond the five-year period provided in the statute, the Commissioner on July 20, 1923, signed a schedule of overassessments which was transmitted to the collector and was checked against his records and the account of the taxpayer upon its books after which he prepared a schedule of refunds and credits which he executed and transmitted to the Commissioner. Thereafter, on October 23, 1923, the Commissioner signed and approved this schedule of refunds and credits which action constituted the allowance by the Commissioner of a credit of a portion of the overpayment for the period in question and the refund of the balance. United States v. Boston Buick Co., 282 U. S. 476, 51 S. Ct. 206, 75 L. Ed. 470; Pottstown Iron Co. v. United States, 282 U. S. 479, 51 S. Ct. 205, 75 L. Ed. 472.

■ In addition the Commissioner specifically stated in the certificate of overassessment that he had given careful consideration to the claim for refund of March 2, 1923, and the determination made. We hold, therefore, that the Commissioner, in allowing the refund and credit involved herein, allowed the claim for refund, McKenney et al. v. United States (Ct. Cl.) 49 F.(2d) 667, and that the plaintiff is therefore entitled, under section 1324 (a) of the Revenue Act of 1921 (42 Stat. 316), to interest upon the credit of $2,854.01 and the refund of $9,360.07 paid pursuant to an additional assessment from the date of payment on June 10, 1920, to the date of allowance, August 6, 1923. This section provides "that upon the allowance of a claim for the refund of or credit * * * interest shall be allowed and paid" from the date of the payment, in the case of an additional assessment, to the date of the allowance.

We need not consider or discuss the claim for refund filed July 2, 1925, which was rejected by the Commissioner September 2, 1926, for that claim, which was filed after the Commissioner's final action, could not and was not intended to be an amendment of the claim of March 2, 1923. It did not mention the questions which form the basis of this suit, and it was also filed after the expiration of the statute of limitation within which a claim could be filed. Nor need we discuss in detail the letters written to the Commis-

sioner on February 13 and February 21, 1928. These letters gave the plaintiff no greater right to bring suit than it had to maintain suit upon the original action of the Commissioner.

Plaintiff is entitled to recover $2,312.53, being interest allowed by section 1324 (a) of the Revenue Act of 1921 at 6 per cent. per annum on $2,854.01 and $9,360.07, totaling $12,214.08, from June 10, 1920, to August 6, 1923.

Judgment will be entered accordingly. It is so ordered.