C-O-Two Fire Equipment Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 29906.    Filed April 26, 1954.

*Richard P. Jackson, Esq.*, and *William B. VanBuren, III, Esq.*, for the petitioner.

*Jules I. Whitman, Esq.*, for the respondent.

126

128

130

## OPINION.

RICE, *Judge:* Respondent has conceded that petitioner is entitled to adjustments in its closing inventory for 1946 of certain write-downs to reflect the obsolescence of the nickel box. See *Mrs. C. J. Barnard*, 18 B. T. A. 1022 (1930). Petitioner's return for 1946 also reflected the obsolescence of parts other than those required to manufacture 10,000 nickel-dime boxes[1] which petitioner estimated it could sell. Respondent increased petitioner's inventory by the value of these items, and included this adjustment in the determination of the deficiencies. But petitioner's present position is that it does not now attempt to justify the foregoing but, instead, claims that the entire

[1] First estimated on petitioner's books for 15,000.

phonette inventory was obsolete at the end of 1946, and that for this reason it is entitled to a determination of an overpayment.

There appears to be a dearth of pertinent adjudicated cases. The opinions of this Court which seem to be nearest to the present problem are *American Manganese Steel Co.*, 7 B. T. A. 659 (1927), and *Dunn Manufacturing Co.*, 14 B. T. A. 225 (1928). In the former, the taxpayer, similarly confronted at the end of the year with the possible need for an adjustment to its inventory, undertook a sales campaign to dispose of the goods calling for the adjustment. The sales campaign resulted in the disposition of some of the questionable inventory in the following year, and developed the fact that there was no market for the greater part of that inventory. The taxpayer thereupon scrapped the inventory, and it was held that it was entitled to reduce its inventory on account of the merchandise scrapped in the subsequent year. The Court, in its opinion, said:

It clearly appears from the evidence that the castings had been properly made and it was believed by the management of petitioner at the end of 1919 that at least a considerable portion of them might be disposed of as a result of a sales campaign. Under such circumstances we believe that petitioner was justified in leaving the castings in the inventory at their cost price until the result of the sales campaign could be determined. It was not until the following year of 1920 that it was definitely determined that there was no present market for most of these castings and during that year, and not before, the unsold castings were in fact scrapped. We are' of the opinion that the inventory loss was properly taken in the year 1920.

In *Dunn Manufacturing Co., supra,* the reduction of closing inventory taken by the taxpayer for 1920 on a claim of certain goods having become obsolete was disallowed. This Court said:

It is the contention of the petitioner that in its closing inventory for the year 1920 there were included certain casing elevators which had cost $37,373.34, but which were in fact obsolete and of no value, and that the inventory should now be adjusted by excluding the elevators therefrom, and the petitioner's net income for 1920 reduced accordingly. On the record we are unable to agree with the petitioner's contention. It may be that in the light of events occurring since 1920 the elevators in question were worthless at that time, but if they were obsolete and worthless, it does not appear that they were so known to be or considered by the petitioner's officers. While sales of the elevators had fallen off materially since the spring of 1920, some sales had been made throughout the year. The inventory was taken by one of the petitioner's officers and he included the elevators therein at their cost. The only explanation of his action in including the elevators in inventory is his statement made at the hearing of this case that "Well, I overlooked it, I guess that is all." This appears to be a belated claim for a deduction from 1920 income on account of goods on hand at that time which have since proved to be unsalable. On the evidence we hold that the cost should not be excluded from the closing inventory.

We believe the rationale of these cases is controlling here, and that they preclude the petitioner from its claim that its closing inventory should be reduced at the end of 1946 because its entire phonette in-

138

ventory was obsolete and worthless, except for its scrap value. At the end of that year, petitioner contemplated the use of the inventory in question in 1947 in its nickel-dime box.

It is true that there was an error of judgment with respect to the inventory at the end of 1946 in the same sense that hindsight demonstrated that this and the entire operation was an error of business judgment. The error in judgment in 1946 with respect to the inventory was not without support in optimistic hope petitioner had in the prospect of the nickel-dime box. Petitioner contemplated the manufacture of the nickel-dime box, and in 1947 did produce 831 of them for sale. The failure of this prospect was not definitely demonstrated until about the middle of 1947.

Petitioner has cited several cases in other courts which appear to be of contrary import,[2] but we have found nothing to indicate that the Tax Court's position is other than as expressed in the above cases.

*Decision will be entered for the respondent.*

---

[2] See *Lucker v. United States,* 53 F. 2d 418 (Ct. Cl. 1931) ; *Queen City Woodworks & Lumber Co. v. Crooks,* 7 F. Supp. 684 (D. C. Mo., 1934).

